IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| JOHN H. GELZER, <br> Plaintiff, <br><br> v. <br><br> JOHN GREGORY SMITH, *et. al*, <br> Defendants. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. 11-cv-02728-AW <br> * <br> * <br> * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum Opinion**

Currently before the Court is Defendants John Gregory Smith ("Smith") and Blumenthal, Delavan & Williams, PA ("BDW")'s Motion to Dismiss and Strike. Doc. No. 8. The Court has reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See* Loc. R. 105(6) (D. Md. 2010). For the reasons articulated below, the Court will grant Defendants' Motion to Dismiss and deny Defendants' Motion to Strike as moot.

I.   **Factual & Procedural Background**

The following facts are drawn from the Complaint and the parties' prior judicial proceeding before this Court, of which the Court takes judicial notice pursuant to Federal Rule of Evidence 201(c)(2), (d). The case at bar results from Plaintiff's attempt to buy out his business partner's share of their jointly-owned businesses. Until January 22, 2008, Plaintiff and his partner William Beall ("Beall") each owned 50 percent of the shares of two businesses: Trutone Press, Inc. ("Trutone") and Minuteman Press of DC, Inc. ("Minuteman"). Compl. ¶¶ 5-6. Prior to Beall's death on January 22, 2008, Trutone purchased an insurance policy with a face value of

$730,000 on the life of Beall, with Trutone as the beneficiary. *Id.* ¶ 9. Additionally, Plaintiff was individually the beneficiary of a separate life insurance policy on the life of Beall, in the amount of $500,000. Doc. No. 8 Ex. E ¶ 7.[1]

Following Beall's death, Plaintiff entered into a Stock Sale Agreement with Beall's widow ("Ms. Beall") in her capacity as personal representative of Beall's Estate, so that Plaintiff could buy out Beall's 50% interest in Minuteman, the business Plaintiff had been the most actively involved in. *Id.* ¶ 8. Under the terms of the agreement, Plaintiff was to pay $500,000 to Beall's Estate. *Id.* ¶ 9. Plaintiff paid the $500,000, but procured the funds for the buy-out from the $730,000 Trutone life insurance policy. *Id.* As an asset of Trutone, the Trutone insurance policy proceeds belonged to Plaintiff and to Beall's Estate equally. *Id.* ¶ 11. As such, the Trutone assets were deemed misappropriated by Plaintiff in a subsequent lawsuit brought by Ms. Beall. *See id.* ¶ 13; Ex. G. Plaintiff alleges that all his actions were taken on the advice of Defendant Smith, who Defendant had thought was representing his interests. *See* Compl. ¶ 19.

On May 13, 2009, Ms. Beall, represented by Defendant Smith's law firm, Defendant BDW, brought suit against Plaintiff for the misappropriation of Trutone assets. *See* Doc. No. 8 Ex. A. Ms. Beall stated claims against Plaintiff for negligence and fraud based upon breach of fiduciary duty, unjust enrichment and conversion. *Id.* Although Plaintiff was properly served with process in the case, he failed to make any appearance in the action or to defend himself in any way. *See id.* Ex. D. As a result, the well-pleaded allegations in the Complaint were taken as true, as well as all the facts stated in the Request for Admissions, *see* Ex. E, and Entry of Default

---

[1] The Court takes judicial notice of admissions deemed to have been made by Plaintiff in the prior suit before this Court. *See Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) ("a district court should properly take judicial notice of its own records"). The Court's taking of judicial notice and reliance on Court records from the prior case does not convert Defendants' Motion to Dismiss into a Motion for Summary Judgment. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("[i]n determining whether a complaint fails to state a claim, we may consider … matters of which we may take judicial notice.").

and Default Judgment were entered against Plaintiff. *Id.* Exs. D, G.  Notably, the Court entered judgment against Plaintiff only for compensatory damages in the amount of $272,233, which constituted Ms. Beall's share of the Trutone assets improperly withdrawn by Plaintiff. *Id.* Ex. G. In granting judgment in these amounts, the Court relied in part on Plaintiff's deemed admissions. Subsequently, about ten months after the Court entered judgment, on December 21, 2010, Plaintiff made an appearance in the case through counsel—the same counsel that is currently representing him in this action.  Rather than contest the merits of the default judgment, however, Plaintiff sought only to correct a clerical error relating to the way interest on the judgment had been calculated. *See id.* Exs. I, J.

On September 22, 2011, Plaintiff filed the instant action against Defendants, alleging violation of the Maryland Rules of Professional Conduct (Count I), breach of fiduciary duty (Count II), and negligence (Count III), and seeking $500,000 in compensatory damages as well as $500,000 in punitive damages.  Plaintiff has since voluntarily withdrawn Count I, requesting that Defendants' alleged violation of the Maryland Rules of Professional Conduct be considered only as evidence of negligence, under Count III.  Additionally, Plaintiff has withdrawn his breach of fiduciary duty claim and his claim for punitive damages.  Thus, all that is left in this action is Plaintiff's negligence claim against Defendants and his plea for compensatory damages of $500,000, which is the amount of Trutone assets Plaintiff misappropriated, allegedly due to the improper advice of Defendant Smith.

**II.     Standard of Review**

    A.     Motion to Dismiss

3

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

4

B.  Motion to Strike

Motions to strike pleadings or a portion thereof are governed by Federal Rule of Civil Procedure 12(f). Rule 12(f) states in pertinent part that "[U]pon ... motion made by a party within 20 days after the service of the pleading upon the party..., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Fourth Circuit has noted that motions brought under this Rule are typically disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, at 647 (2d ed.1990); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir.2001); *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664-65 (7th Cir.1992) (noting that allegations may be stricken under Rule 12(f) if the matter bears no possible relation to the controversy or may cause the objecting party prejudice).

**III.  Analysis**

A.  Motion to Dismiss

Plaintiff alleges that Defendants are liable for negligence due to: (1) Smith and BDW's failure to advise Plaintiff that BDW was representing the Beall Estate; and (2) Smith's bad advice that Plaintiff could use Trutone's assets to buy out the Beall Estate's interest in Minuteman. For the reasons stated below, the Court finds that Plaintiff's negligence claim must fail.

In order for a client to recover damages against an attorney for negligence, the plaintiff must show that the injury alleged proximately resulted from the attorney's negligent acts. *See, e.g.*, *Central Cab Co. v. Clarke*, 270 A.2d 662, 668 (1970). In the instant action, Plaintiff has not

properly alleged any concrete injury other than that stemming from the default judgment entered against him in the prior action. To the extent Plaintiff had any meritorious defense in the prior action related to Smith's bad advice or to the improper representation of Smith's law firm in that action, Plaintiff had a duty to raise all such defenses prior to final judgment. Although the Court is not prepared to bar Plaintiff's claims under the doctrine of collateral estoppel, given federal courts' hesitancy to apply collateral estoppel to default judgments, Plaintiff's claims are barred by the doctrine of laches.[2]

1. Laches

In order for the equitable doctrine of laches to apply, a party must demonstrate: (1) lack of diligence by the party against whom the defense is asserted; and (2) prejudice to the party asserting the defense. *See Knickman v. Prince George's Cnty.*, 187 F. Supp. 2d 559, 565 (D. Md. 2002) (*quoting White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990)). "'An inexcusable or unreasonable delay may occur only after the plaintiff discovers or with reasonable diligence could have discovered the facts giving rise to [his] cause of action.'" *Id.* (*quoting White*, 909 F.2d at 102). "Prejudice to the Defendant must be a result of the plaintiff's delay in pursuing [his] claim." *Id.* (*citing Tobacco Workers Int'l Union v. Lorillard Corp.*, 448 F.2d 949, 958 (4th Cir. 1971)). "Defendant 'is aided by the inference of prejudice warranted by the plaintiff's delay.'" *Id.* (*quoting Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 128 (4th Cir. 1966)).

Here, Plaintiff exhibited a lack of diligence by failing to simply object to BDW's representation of Ms. Beall during the prior suit or to raise Smith's negligence as a defense to Ms. Beall's claims. Plaintiff undoubtedly discovered the facts giving rise to his present claims at

---

[2] Defendants contend at several points in their briefings that this suit is or may be barred under the doctrines of *res judicata,* collateral estoppel, waiver, estoppel, accord and satisfaction, release, failure to plead a compulsory counterclaim, illegality, unclean hands, statute of limitations, and failure to mitigate damages; however, Defendants have not cited to any legal authorities or otherwise briefed the Court as to why these affirmative defenses apply.

6

the time the prior suit was filed against him. The prejudice of Plaintiff's delay to Defendants is also readily apparent; Defendants are now required to appear and defend the instant action.

In determining whether the plaintiff's delay was "inexcusable or unreasonable," the Court looks to the reasons for the party's delay. *See EEOC v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1222 (D. Md. 1989). Here, Plaintiff has offered no explanation as to why he did not object to Ms. Beall's retention of Defendants in the prior action. Plaintiff has not alleged that he failed to receive notice of the action, and in fact Plaintiff made an appearance in the action to correct a clerical mistake. Plaintiff has not alleged that he was unaware of BDW's representation in the prior action and has not alleged that his counsel failed to advise him about the apparent conflict of interest.

Instead, inexplicably (considering his present claims), Plaintiff allowed default judgment to be entered against him and now, in a round-about fashion, is seeking to attack the judgment of compensatory damages for which he was deemed liable, and which he has already satisfied. Had Plaintiff raised the issue of Defendants' negligence in the prior suit, any potential injury Plaintiff allegedly experienced due to the Court's judgment would have been negated, as Defendants' negligence would have been addressed and resolved prior to judgment. If Plaintiff's claims had any merit, he had a duty to raise them and mitigate his damages prior to the Court rendering judgment against him. At this point, the prejudice to Defendants is clear because they are now required to defend a separate lawsuit. The time and effort involved to defend a lawsuit certainly establishes substantial prejudice sufficient to warrant equitable relief under the laches doctrine.

Moreover, as discussed above, Plaintiff has failed to show that any injury alleged proximately resulted from the attorneys' negligent acts. *See Central Cab Co.*, 270 A.2d at 668. Plaintiff alleges that he was injured by Defendants because, due to Smith's bad advice and the

7

subsequent lawsuit in which BDW represented Ms. Beall, Plaintiff ended up spending over $750,000 solely for the Minuteman business whereas Plaintiff had understood at the time of Beall's death that he only had to pay Ms. Beall $500,000 for both Trutone and Minuteman. The Court finds no redressable injury here. If Plaintiff had truly believed he was legally entitled to own both businesses for only $500,000, he should have and indeed had a duty to bring such a claim in the prior suit in which Ms. Beall made a claim against him for 50 percent of the Trutone business. Plaintiff's claim of entitlement of the businesses would have constituted a compulsory counterclaim pursuant to Federal Rule of Civil Procedure 13(a), since the issues of fact and law in the claim and counterclaim would have been essentially the same, both relating to ownership of Trutone; the same evidence would have been used by both parties to support or refute the claims, and there is a logical relationship between the claims. Fed. R. Civ. P. 13(a); *see also Aaron Fine Arts v. O'Brien*, 244 F.R.D. 294, 297 (D. Md. 2007).

Plaintiff was not proceeding *pro se* in the first action but was represented by the same counsel as is representing him now. Nor has Plaintiff even attempted to provide an explanation for his utter failure to appear and defend himself or to raise any of the present claims in the former action. To the extent Plaintiff had any claim to the assets of Trutone or Minuteman of which he was deprived, those claims were waived when he failed to assert them in litigation concerning ownership of the businesses.

At its core, Plaintiff's present claims are little more than a round-about attempt to attack the Court's prior judgment by offering new defenses in the form of negligence claims against Ms. Beall's attorneys. Even if Smith's bad advice led Plaintiff to misappropriate assets, Plaintiff has shown no injury other than that he was required to pay back the misappropriated amount. Plaintiff was not required to pay any punitive damages to Ms. Beall as a result the Court's

judgment against him. At most, any bad advice on the part of Defendant Smith would have temporarily enriched Plaintiff, although unjustly so, and the subsequent lawsuit went no further than to disgorge Plaintiff of that unjust enrichment. The Court can find no injury based on these facts, and to allow this suit to proceed any further would result in substantial prejudice to Defendants.

      B.     <u>Motion to Strike</u>

In addition to their Motion to Dismiss, Defendants move to strike certain allegations in Plaintiff's Complaint which they contend are contrary to facts established in the prior lawsuit. Because Plaintiff's Complaint will be dismissed, the Court finds it unnecessary to address Defendants' Motion to Strike.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss and Strike will be granted-in-part and denied-in-part, with the result that Defendants' Motion to Dismiss will be granted and Defendants' Motion to Strike will be Denied as moot. A separate order will follow.

<u>April 2, 2012</u>                                                    /s/
    Date                                                         Alexander Williams, Jr.
                                                                 United States District Judge